UNITED WIRELESS TELEGRAPH CO. et al. v. NATIONAL ELECTRIC SIGNALING CO.

(Circuit Court of Appeals, First Circuit. June 18, 1912.)

No. 953.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—APPARATUS FOR WIRELESS TELEGRAPHY.

The Fessenden patent, No. 706,736, for apparatus for wireless telegraphy, if not wholly invalid, because of amendments of the application while pending in the Patent Office, must be restricted to the principle of operation described in the specification; as so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the District of Maine.

Suit in equity by the National Electric Signaling Company against the United Wireless Telegraph Company, Selden Bacon, receiver, and others. Decree for complainant, and defendants appeal. Reversed.

For opinion below, see 189 Fed. 727. See, also, 198 Fed. 385.

Livingston Gifford, of New York City (Philip Farnsworth, of New York City, on the brief), for appellants.

Francis W. H. Clay, of Pittsburgh, Pa., and Melville Church, of Washington, D. C., for appellee.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. This is an appeal from the decree of the Circuit Court in a suit for infringement of letters patent 706,736 to Reginald A. Fessenden for apparatus for wireless telegraphy.

The appellant was found to infringe claims 6, 9, 10, 11, 12, 14, 19, 20, 21, 27, 28, 29, 30, 32, 33, and 35.

The nature of the Fessenden invention is thus set forth in the specification:

"The invention described herein relates to certain improvements in apparatus for the electrical transmission of signals from one station to another without the use of conductors connecting such stations, such apparatus being more especially designed for the carrying out of method described and claimed in application serial No. 740,429, filed December 15, 1899.

"In the methods heretofore employed the electromagnetic waves generated at the receiving-station produce voltages in the receiving-circuit. These voltages or currents, being impressed upon a suitable material normally non-conductive, render the same conductive, and thereby permit the passage of a current through a circuit in which said material, usually termed a 'coherer,' is included. After the passage of the voltages produced by each series of electromagnetic waves generated at the sending station, the coherer must be operated in some way to restore it to normal or nonconductive condition.

"The object of the present invention is to provide for the generation, by currents produced by electromagnetic waves, of induced currents in a second element or circuit, and by the reaction of the current in this second element or circuit on the field formed or produced by the currents in the receiving conductor to produce motion which is directly or indirectly observable.

"In general terms the invention consists in apparatus whereby the energy of electric currents produced by electromagnetic waves may be transformed into the energy of motion and the energy of such motion employed for producing intelligible signals."

Two of the forms of apparatus at the receiving station are thus described:

The first for producing visible movements or signals:

"At the receiving-station the receiving-conductor is conveniently formed by a wire or wires 6, projecting up vertically or at an inclination to a suitable height, which are also grounded. A coil or coils 7 are arranged in the circuit of the conductor 6, and an element or coil of wire 8, forming a closed circuit, is supported with a freedom of movement in such relation to the coil or coils 7 that the current produced by the electromagnetic waves will induce a current in the element 8. The element 8 is suspended, preferably, in such manner that a plane at right angles to its axis will form an angle of approximately forty-five degrees (45°) with a plane at right angles to the axis of the coil or coils 7, so that the reaction of the current induced in said element, with the field produced by the coil or coils 7, will cause the element 8 to move with reference to the coils 7. This motion of the element may be observable by means of a mirror 9, attached thereto, reflecting a beam of light on a scale, or said element may form a part of the circuit of a recording siphon, etc. As shown in Fig. 2, the coil 7 may be connected to the secondary coil 11 of a transformer, whose primary coil 12 is connected in series with the receiving-conductor."

The second for producing audible signals through the use of a telephone as a recording instrument:

"A desirable means for transforming the electromagnetic waves into recordable motion is shown in Figs. 3 and 4. The element 8 is balanced on supporting-rods or knife-edges *13*, one of which is formed of a good electrical conductor, as silver, the element 8 being preferably formed by a silver ring. A carbon block *14* is so arranged that a portion of the ring between the supporting-rods will normally rest lightly thereon. This microphonic contact, the conducting pivotal support, and the portion of the ring between them form parts of an electric circuit, which also includes a generator *15* and a recording instrument *16*, as a telegraphic sounder or the receiver of a telephone. When a current is produced, as above described, in the coil *7*, the element or ring 8 will be caused to press on the carbon block, thereby increasing its conductivity. When using a telephone-receiver as a recording instrument, the generator *15* is preferably of a character capable of producing an alternating current, as such current causes a constant vibration of the diaphragm, the vibrations increasing in intensity with an increased flow of current in the circuit.

"This increase in intensity of action with increased flow of current is characteristic of this form of receiver and also of the form shown in Fig. 1. In this it is sharply differentiated from such devices as the coherer, which either give a strong indication or do not give any. This characteristic is advantageous in that if the signal sent—say a dot—be too weak to give an action of the full intensity it may still in most cases be read and not missed entirely, which is of value in sending code messages."

The features common to both forms of complainant's apparatus are the free grounded antenna wire to act as a receiving circuit, with a coil therein whereby a field is created, and the closed ring *8* so placed that oscillating currents are induced therein, and that such induced currents will react upon the field.

In the first form ring *8* acts as the indicator.

In the second form ring *8* is used to vary the resistance of a battery circuit containing a telephone.

Each form of apparatus is operative, but neither form has been used commercially.

It is desirable at this point to describe the defendant's apparatus in respect to such features as are here involved.

There is a free grounded antenna circuit, and an induction circuit. The induction circuit, however, differs from Fessenden's both in structure and in the mode of utilizing the currents.

There is in this circuit a perfectly passive piece of material, carborundum, which suffers no change of resistance or physical character like the coherer, and is a detector which will operate to give good signals, even though no local battery is used, showing that its valve action is such as to enable the incoming energy of the radiation itself to be the source of the signal.

The induction circuit with this carborundum detector has the characteristic of rectifying oscillating current, which by itself will not operate a telephone, into a series of direct impulses which will operate a telephone.

It receives electrical energy in such form that it is incapable of operating a telephone, and passes out electrical energy that will operate a telephone.

The detector interposed in the induction circuit is also in a local battery circuit which includes the telephone receiver.

The battery current, a direct current, is varied by direct impulses coming through the detector; these impulses, however, being in themselves sufficient to operate the telephone.

The free grounded antenna circuit, which is an "open door" to all the incoming radiations, was not new with Fessenden, but was in Marconi's patent of January, 1899, and in Lodge's patent of 1898, neither of which had the coherer in the antenna circuit.

Each, however, shows a coherer in the induction circuit.

The differences between the devices of the patent in suit and the alleged infringing devices, both in structure and in electrical action, are very great.

The defendant does not produce motion of a part by the reaction of currents upon the galvanometer principle, nor are its circuits capable of such electrical action as is characteristic of complainant's device.

Its induction circuit has neither low resistance, nor low voltage operation, but, on the contrary, has high resistance and requires high voltage. Defendant does not produce motion that is visible; neither does it employ the mechanical pressure of a moving part to vary the resistance of carbon or other part of a battery circuit. All these features of complainant's device are absent.

The patent states that "the apparatus employed at the sending station may be similar to that now in use for the generation of electromagnetic waves" and lays stress upon the apparatus at the receiving station.

Counsel for complainant say:

"The patent is on a receiver, and the essence of the receiver is not so much the detector as the detector circuits.

"The departure from the prior art was in the arrangement of circuits for a free current flow."

The complainant's argument upon the question of infringement treats as nonessential the reaction of the current in the second element or circuit on the field formed by the currents in the receiving conductor, although the patentee, as we have seen, states that the object of his invention is to produce motion by the reaction of an induced current upon the field formed by the currents in the receiving conductor.

In the defendant's apparatus there is no such reaction of induced current upon a field, and no motion is produced that resembles the mechanical motion which is produced by the patentee's arrangement of circuits.

The defendants do not in the obvious sense of the patent employ the "energy of motion"—i. e., of mechanical motion—to produce visible signals, or audible signals, by varying the resistance of a relay circuit wherein is a telephone.

The defendant is charged with infringement, not because it has what the patentee stated to be his invention, but because it is said

to have what experts and counsel say was in fact the true invention disclosed by the patent in suit.

It is said that in the prior art it was assumed that the coherer was necessary, and that—

"Fessenden's conception that it was not necessary was a new and startling departure from the prior art; that his invention lay in the 'idea conceived' rather than in special apparatus."

He introduced, it is said, the principle of the "open door receiver" whereby all waves were admitted and permitted to operate cumulatively or with a combined effect upon the signal indicating or recording devices.

His method, it is said—

"consisted simply in providing an always closed circuit for the incoming current of waves, extending from the top of the antenna way to the ground, and the same in any derived circuit. * * *

"The 'nub' of this new method * * * is the always-closed circuit (affording, of course, an always open electrical path) for the oscillatory electric waves or currents provided by the receiving conductor, or whatever circuit the detector was in."

It was also stated in argument that—

"the essence of Fessenden's invention is not so much the indication of the presence of oscillatory currents as the obtaining of oscillatory current to detect."

The departure of the complainant's counsel and experts from the patent is illustrated by the following extract from complainant's brief:

"The point to be remembered is that it does not matter how the current in the receiving wire makes its presence manifest, except that in the language of Fessenden's first and original application 'the energy of the currents generated by the waves at the receiving station [are transformed] into the energy of motion.' This motion, as we show later, may be the motion of a ring directly seen, or the motion of a ring indirectly felt, or the motion of a telephone diaphragm directly heard, or any other form of motion with any conceivable means for the motion making itself known to the senses."

It may be said in general of the complainant's case that the usual course of comparing complainant's and defendant's devices with respect to structure and mode of electrical operation is not followed.

The fundamental error in the argument is in excluding from the comparison the coil in the receiving wire, forming a field, and the reaction of the induced current in ring 8 upon that field. Were this omitted from the patent as completely as from the complainant's argument on infringement, there would remain no description of means for producing signals. The omission is of the principle of operation—of the only means indicated for using the energy received.

Fessenden states that this was the feature wherein his invention consisted.

Counsel for complainant say that this statement is a mistake, and propose various other statements of what the invention was.

We may recall the fact that complainant has said that the essence

of Fessenden's invention is not so much the indication of the presence of oscillatory currents as the obtaining of oscillatory current to detect, and also the sweeping terms in which it ignores all differences in the modes or the means of making manifest the presence of current.

We shall consider later the question of the mode of utilizing the currents for signaling and the soundness of the argument that ignores these differences.

There are two aspects of the matter, both essential to be considered:

(a) The reception and accumulation of energy from radiations.

(b) The application of this energy to use in signaling.

*As to the reception of the radiations.* The complainant's argument refers to Marconi's 1897 patent, wherein the coherer was in the antenna circuit, instead of to Marconi's 1899 patent, wherein, as in Lodge's 1898 patent, the antenna circuit was free as in Fessenden's patent.

So far the "open door principle" is in the prior art. In the induction circuit of Marconi's 1899 patent and Lodge's 1898 patent the induced current has to encounter the resistance of the coherer— i. e., its resistance to the oscillating current which it picks up (not its resistance to the battery current); but after it has overcome this resistance the received current continues to oscillate through the circuit which contains a condenser.

The means for getting and accumulating energy are shown both in Lodge and Marconi, with a single difference. Fessenden does not, in receiving current in his induced circuit, encounter the initial resistance of the coherer. If upon this difference it may be said that Fessenden has the "open door," while Lodge and Marconi have a "closed door," then the defendant, whose circuit with a carborundum detector has a higher resistance than the coherer, also has a "closed door," and does not follow the "open door" principle of Fessenden.

To the defendant's argument that it has the high resistance of the prior art and not the low resistance of Fessenden's induction circuit, complainant replies that—

"as pointed out by Dr. Kennelly the term 'low resistance,' as used by Fessenden, means low only as compared with the infinitely high resistance of a coherer."

Reference is also made to what Judge Townsend says about the resistance of the coherer being so high as to *prevent* passage of current in Marconi Wireless Tel. Co. v. De Forest Wireless Tel. Co. (C. C.) 138 Fed. 663, line 12. What Judge Townsend said is this:

"The powder in the tube *j*, when in its normal condition, offers such an amount of resistance that the local battery current will not pass through it."

Here is a fallacy; the substitution of the coherer's resistance to the battery current for the resistance of the coherer to the incoming waves—an entirely different matter. In picking up waves the coherer is made as sensitive as possible. It is not designed to offer

resistance to them, though it is designed to offer resistance to the battery relay current. In Lodge and Marconi the coherer, though of higher resistance than Fessenden's circuit, is not designed to offer resistance to the incoming waves, though it is designed to offer resistance to the battery current. The "open door" and "closed door" argument is fallacious, in making no clear distinction between the resistance to the admission of energy to the detector and the resistance in the path of the battery current.

So far as the admission of the radiations is concerned, the defendant follows the prior art, and not Fessenden. Its circuit, with a condenser, is in both the Marconi and Lodge patents. The means for the admission and accumulation of energy are in the prior art.

The argument that because Marconi used a coherer he had a "closed door," i. e., an open circuit, and that Fessenden, because he had no coherer, but a closed circuit, had an "open door," and that any one who has a device with an "open door" infringes Fessenden's patent, is in many respects unsound.

The apparatus at the receiving station must have two functions: It must receive impulses, and it must utilize these impulses to produce signals. The "open door" contention ignores the second function, and erroneously assumes that the open door by itself constitutes Fessenden's invention, irrespective of the mode of treatment of the impulses received, in order to perform the function of signaling, and irrespective of differences in apparatus and in electrical principles involved.

*The application of the energy to use in signaling.*

In the prior art Lodge and Marconi used it to operate a relay battery current. It may be said that it was used "to pull the trigger" and release a battery current that before the admission of radiations was obstructed by filings in the coherer.

Fessenden had the conception that this energy might be used in another way and without a relay to get motion "without the necessary interposition of a secondary or auxiliary generator for the production of such motion," as appears in claim 1 of his original application. He used it and got visible motion by the use of a well-known electrical device. He also used it, as Marconi had used it, to operate a relay; but he did not disclose in his patent more than one way of operating without a relay, which as apparatus was not of commercial value, and as illustrative of principle was practically a following of Hertz. This conception was not new with Fessenden, nor was it first described in Fessenden's patent. In the Electrical World of December 18 and 25, 1897, and March 2, 1898, were published articles by Northrup, Pierce, and Reichman and others, which constitute prior publications, that make the suggestion to dispense with coherers and to apply the principle of the galvanometer, and describe apparatus that was constructed upon this principle, and was substantially similar to one form of Fessenden's apparatus.

This visible motion apparatus is the sole justification for many of the arguments of counsel, and this is inoperative without the

reaction between the field and induced current. No abstraction which omits this is valid. In what counsel say is the preferred form of apparatus, Fessenden attempts to use the radiations for the purpose of changing the resistance of a battery circuit or relay. This broadly was the conception of Lodge and of Marconi. It is said, however, that with the coherer there is an interrupted operation, while with Fessenden there is a continuous operation. This argument, however, does not take into consideration the microphonic detector which it is conceded is not within Fessenden's patent.

The use of a telephone receiver in wireless telegraphy was not new with Fessenden, and after the Telephone Cases, 126 U. S. 1, 8 Sup. Ct. 778, 31 L. Ed. 863, decided in 1888, there was no room for a new conception of operating a telephone by an unbroken undulating current as distinguished from make and break. The problem was to find means and invent apparatus. Fessenden, upon the strength of his telephone receiver combination, could not claim the exclusive right to Bell's undulating current for use in wireless telegraphy and refer all other inventors to the art as it stood at the time of Reis. Fessenden's conception of means for operating by the wave energy and without a relay begins and ends with his visible motion device. When he makes his telephone combination he uses the relay, and shows no conception that a telephone can be operated solely by the energy received from electromagnetic waves. He uses the telephone as a "recording instrument" acting upon old principles. He seeks to vary the resistance of the telephone circuit in a new way by pressure of his ring 8. His telephone apparatus, like his visible motion apparatus, so far as can be discovered from the patent, is dependent upon the reaction of currents in the antenna wire and induction circuit.

Fessenden's method of using the current, therefore, in each form of apparatus, is a special and limited method. His principle is reaction of current upon a field. If it be said that he uses the currents continuously and not interruptedly as in the coherer, he nevertheless cannot claim broadly a continuous use of current, but at best a continuous use in the mode in which he applied it. He can claim broadly neither a closed circuit nor continuous current, because these alone are not inventions, and because further invention of apparatus and further discovery is essential to apply those features to practical use.

The statement that Fessenden taught that in the use of the coherer the art was on the wrong track, ignores the fact that in the prior art were many "detectors," other than the coherer, whose function was to receive energy from radiations and use it for signaling.

That Marconi's coherer was not self-restoring and required to be tapped in order to afford resistance to the battery current was regarded as a defect, and various attempts were made to provide a substitute for the coherer. The workers in the art did not need to be told that a substitute was desirable; the art was seeking substitutes, and various substitutes were invented.

Counsel for complainant say:

"The defendant may, if it pleases, use an imperfect contact device or coherer, or any other form of appliance, such as the Hughes device, as a detector, which provides a varying contact resistance in the detector circuit, and it will be free of the Fessenden patent."

In what are called the prior Hughes publications of May and June, 1899, there is described the use as a receiver of what is described as a "microphone," with a carbon and steel contact. The defendant has proved that this device, though described as a microphone, permits the operation of a telephone without any battery; and it is contended that the absence of a battery is conclusive evidence of some other action than that of a microphone. In other words, that the instrument is acting, not as a contact resistance varier, but to modify the received energy into such form that it will operate a telephone. This, of course, is not what is understood by microphonic operation, and the defendant is right in saying that the mere fact that the instrument was called a microphone is insufficient to show that without a battery it works upon what is known as the microphonic principle.

After Marconi's patent of 1899, with its free antenna circuit, the principal problem was, not how to receive the waves, but how and by what apparatus to utilize them to the best effect. At present the telephone is ordinarily used to detect the signals. A battery current is not essential; but the oscillatory current itself, if rectified, will supply all needed energy to operate the telephone.

We do not find, however, in the Fessenden specification, any disclosure of this fact, nor any suggestion that an oscillating current can be rectified into such a succession of direct impulses as will operate the telephone. If the contacts of a microphone can be so adjusted as to rectify the current, this is so foreign to the microphonic operation described by Fessenden, which requires the use of a battery current, that no contention can be built upon it by the complainants in this case.

The complainant concedes the right to use any contact except a good contact, but there is no reason for denying to the defendant the right to use any kind of a contact for the purpose of rectifying oscillating current into direct current or direct impulses. The contention that the defendant has borrowed nothing from Fessenden; but that its circuits are derived from the prior art, and that the problem was solved by substituting for the coherer a detector, which is superior to the coherer and operates upon a different principle is very satisfactorily established.

A comparison of the apparatus of the complainant and defendants in structure and in principles involved is enough to establish noninfringement of the Fessenden patent. The various generalizations whereby the complainant departs from Fessenden's invention and from his patent, and seek to hold the defendants as infringers by the test of abstractions, well illustrate the difference between such general conceptions as scientific speculation might draw as to the lines upon which an art might develop, and the definite, practical,

and useful applications of general principles which, when embodied in structure, are properly classed as inventions, and serve as proper tests for infringement by a fair comparison and a fair application of the doctrine of equivalents.

In American Bell Tel. Co. v. National Telephone Co. (C. C.) 109 Fed. 976, 1043, it was said:

"The patent statutes require the patentee himself to claim and define his invention, so that the public may know its rights, and so that there shall not be imposed upon the courts the burden of constructing upon a hearing new claims from the interpretations that experts may place upon language of the most sweeping and general character."

We find in Fessenden's application for his patent no evidence of a failure to disclose the nature and scope of his invention of apparatus. His invention is correctly described, and his claims, fairly construed, must be limited to apparatus operating upon the galvanometer principle.

Fessenden's original application was filed December 15, 1899, and his divisional application for the patent in suit, filed May 17, 1900, contained five claims.

June 6, 1902, and thereafter the specification was extensively amended, and a large number of claims were added of a most extreme and sweeping character, which ignored the original description of invention.

The subject of tuning was apparently an afterthought. It is conceded that not a word was contained in the original application on that subject.

It is true that in the original application is shown and claimed a condenser in circuit; but its function is not described nor claimed, nor is it shown to be adjustable, and that part of the specification and claims which relates to the subject of tuning is so clearly new matter and so clearly an enlargement that it comes directly within the principles of Stewart v. Lava Co., 215 U. S. 168, 30 Sup. Ct. 46, 54 L. Ed. 139, and the many decisions following Railway Co. v. Sayles, 97 U. S. 563, 24 L. Ed. 1053.

It is, however, conceded that the tuning question is a subordinate question, and is dependent upon the soundness of the complainant's contention as to the scope of Fessenden's invention.

There was also introduced by amendment of the specification a new phrase, "current-operated wave-responsive devices," upon which a large part of the complainant's case is built.

As defined by the amendment this term—

"as used herein and by me generally is meant wave-responsive devices having all their contacts good contacts and operated by currents produced by electromagnetic waves. They are hence to be distinguished from wave-responsive devices depending for operation upon varying contact resistance."

This accompanied new claims in which the term was used in a breadth that would include the bad contact or microphonic contact, the anticoherer, or self-restoring coherer, and even the tapped coherer of Marconi.

Read apart from the specification, certain claims are broad enough

to cover all devices using the energy of the oscillatory current. The expression "having all their contacts good contacts" is not descriptive of Fessenden's devices. The addition of this clause to the specification is remarkable. It is not descriptive of either form of Fessenden's device. His first form has no contacts, and his second form has only a bad contact, a microphonic contact. It is merely an arbitrary exception of all contact devices except good contacts—to be read in connection with the all-embracing expression, "current-operated wave-responsive device."

It defines the apparatus claimed by stating the kind of energy that is to be used to operate it, although the use of that energy, oscillatory currents, received from Hertz waves, is the foundation of the wireless art. All receivers must be current operated.

This is not a claim for described apparatus, but is a claim for the use of an electromotive force, and for all apparatus in which it can be employed.

In the specification, however, bad contact or microphonic apparatus is excluded by the expression we have quoted; and this is acknowledged to be outside of Fessenden's patent.

It is like a claim for a water current operated device, other than such devices as have been previously used, but inclusive of all subsequent devices which are not like those of the prior art. The fallacy of this mode of argument is that, while it does not claim what is clearly an anticipation, it covers everything else, irrespective of its resemblance in essential particulars to the Fessenden device.

"It is a familiar rule that a generalization or a definition that is too broad cannot be made good by making an arbitrary exception of each case that comes within its terms, but which should not have been included. A single contrary example destroys the generalization." American Bell Tel. Co. v. National Tel. Co. (C. C.) 109 Fed. 994.

A generalization so broad as to cover the prior art must be withdrawn, and a new one made that is narrower and is limited by the point of difference.

But it is said that Fessenden employs the term in a special sense—in a peculiar sense—that "he made his own dictionary" in his patent. In what sense?

The first distinction is as to the character of current in respect to voltage. He says:

"The receiving mechanisms are actuated by currents produced by electromagnetic waves, and not by voltages, as in case of the coherer.

The distinction, of course, cannot properly be drawn between current and voltage, but must be drawn between two kinds of current—high voltage currents and low voltage currents.

The distinction in apparatus which conforms to distinctions between high and low voltage current is high and low resistance.

His apparatus is to have low resistance as distinguished from the resistance of the coherer or of the microphonic contact.

The first "open door" to the incoming waves is the free antenna

wire grounded. Here is low resistance. Marconi and Lodge, before Fessenden, had this; and in this defendant takes from the prior art.

All the energy that comes is here received. It is sent into an induction circuit. In Fessenden this circuit has low resistance. In Marconi and Lodge there is such resistance to the induced current as is caused by the relatively higher resistance of the coherer in circuit.

Care should be taken to distinguish between the resistance of the coherer to the battery current in the local or relay circuit and the resistance to incoming waves. There is a "closed door" to the battery current. This has nothing to do, however, with the question of the initial resistance to the incoming energy from the Hertz waves.

The coherer has two properties. It will afford resistance or "close a door" to a battery current, and because of its sensitiveness it will pick up oscillatory current. But after the coherer has picked up oscillatory current, this current continues to oscillate through the coherer so long as the Hertz waves endure.

The only sense in which it can be said that Fessenden has an "open door" and Marconi and Lodge a "closed door"—i. e., closed to the incoming oscillatory currents—is that the induction circuit of Fessenden is of lower resistance than the coherer.

In that sense, however, the defendant's carborundum contact receiver has a "closed door," for it has a resistance higher than the coherer.

The complainant says that the essence of Fessenden's invention is not so much the indication of the presence of oscillatory currents as the obtaining of oscillatory current to detect.

But it must be remembered that the defendant's circuits are borrowed from Marconi and Lodge, and that the defendant's difference in structure is that, instead of a coherer, there is used a detector with a higher resistance.

Both Lodge and Marconi have a condenser in the induction circuit. They receive energy from a free antenna circuit. They pass it in oscillatory form to an induced circuit with a condenser, and after it has overcome the initial resistance of the detector it continues in the circuit.

If high-voltage currents are required for Marconi and Lodge, they are also required for defendant.

The distinction as to the voltage required in order that current be received seems, therefore, of no importance upon the question of infringement.

The complainant's contention that cumulative action of big and small waves was first used by Fessenden is disputed.

Professor Pierce says:

"There is absolutely no reason for supposing that the response of the filings coherer of Marconi was caused by the solitary effect of the first impulse that reached it in a wave train. The successive oscillations produced by a wave train follow each other through the coherer at intervals of about one one-millionth of a second; whereas, the indicating mechanism—the telegraph relay or sounder—of the Marconi apparatus required more than one-twentieth of a second to respond, and no one can say that the

coherence occurred at the arrival of the first impulse of the wave, or at some peak of the wave, rather than as the result of the integrative action of many trains of waves."

Counsel says, also, that current-operated means operated by the whole current, big waves and small waves, while voltage-operated means operated by some current, and not all of it.

"One is an interrupted operation, and the other a continuous operation—just exactly as in the Bell Case regarding the difference between Reis and Bell.

"Reis was in effect voltage-operated because he made and broke the circuit. Bell's was current-operated, because he operated a continuous circuit that was unbroken."

The continuity of the current depends primarily upon what is sent out at the sending station.

If dots and dashes are sent, oscillating currents corresponding in duration will be received.

When received upon the antenna of the receiving station, there will be induced currents of corresponding duration in the secondary circuit.

In Fessenden's visible motion device there is no interruption of the application of the received energy, but that all the energy received is usefully applied does not seem established, for the reason that, when the ring has moved under the impulse of received radiations, it must be restored to its original position in order to give by its motion a new signal. During the time of restoration there is an interruption of the useful application of the received energy, which corresponds somewhat to the interruption of the use of energy in the coherer.

But, even if Fessenden's apparatus shows the continuous application of the received energy, he is not for that reason entitled to claim an unbroken current under this patent. Fessenden's conception was no broader than the essential elements of his idea of means, and this was not broadly current operation, but specifically current operation on the galvanometer principle.

We are of the opinion that there is no infringement of the Fessenden patent. We are also of the opinion that the enlargement of the original application by the amendments which introduce the new subject of tuning was not justified. Whether in view of the prior publications any of the claims of the Fessenden patent are valid we do not find it necessary to decide. Restricted as they must be to include the principle of operation described in the specification, they are not infringed.

The decree of the Circuit Court is reversed, and the case is remanded to the District Court, with instructions to dismiss the bill; and the appellants recover costs in both courts.