## HEALTH PRODUCTS CORPORATION v. EX-LAX MFG. CO., Inc.

Circuit Court of Appeals, Second Circuit.
November 1, 1927.

No. 39.

1. Patents ⬤⟜99—Specifications must be more than suggestion for promising experiment, and must contain complete directions, leading with certainty to result.

Specifications must be more than a suggestion for promising experiment, hit or miss; they must contain complete directions, leading with certainty to result.

2. Evidence ⬤⟜584(1)—Reasons justifying reluctance of courts to place much weight on ex parte experiments do not extend to what is done ante litem motam, when there is no motive to fabricate.

Reasons which justify reluctance of courts to place much weight upon ex parte experiments do not extend to what is done ante litem motam, when there is no motive to fabricate.

3. Patents ⬤⟜328—1,038,227, for chewing gum containing phenolphthalein, held not infringed, because disclosure was insufficient.

Patent No. 1,038,227, to Nathan Sulzberger, September 10, 1912, for chewing gum containing phenolphthalein, held not infringed, because disclosure of gum and drug mix was insufficient.

Appeal from the District Court of the United States for the Eastern District of New York.

Patent infringement suit by the Health Products Corporation against the Ex-Lax Manufacturing Company, Inc. From the decree, plaintiff appeals. Affirmed.

Appeal from a decree of the District Court for the Eastern District of New York, dismissing a bill in equity for the infringement of patent No. 1,038,227, to Nathan Sulzberger, issued September 10, 1912.

The single claim in suit is for "a chewing gum containing phenolphthalein." The specifications state that the applicant has found "that by embodying, mixing, etc." (sic), "pharmaceutical preparations for internal use in a gum, chewing gum," he overcomes the disadvantages of administering drugs in tablet form. "When such preparations are embodied, mixed in, or dissolved into a chewing gum, these preparations are, when such gum is chewed, by the process of mastication more or less rapidly extracted or separated from the gummy substance in which they are imbedded. * * * In some instances it will be preferable to embody the substance into such gums directly; in other cases, such active substances will best be first dissolved or embodied in the form of an emulsion." As an illustration the applicant suggested phenolphthalein, though other laxatives, such as aloe, cascara, or podophyllin might be used. Medicinal agents generally "may also be embodied in such gum, etc."

The patent lay idle for nearly 10 years, until the plaintiff bought it of Sulzberger and began actively to exploit it. The sales grew rapidly, and during the fourth year reached $4,000,000, representing an outlay to the purchaser of about twice as much. As sold, the phenolphthalein is not mixed into the gum, but dusted upon the outside, a finishing coat of sugar being added to form the tablet. The theory is, which the evidence appears to bear out, that the chewer's teeth drive in the laxative layer and thereafter introduce it into the saliva gradually, whence it passes to the bowels, not at once as a bolus, but by seepage, as it were. If this practice be within the claim, the defendant confessedly infringes; otherwise, not.

At least as early as 1907, one Davis put upon the market a laxative chewing gum, made by cooking the constituents of the gum with cascara, and kneading and rolling the mass. The proof of the public sale of this product was adequate to establish a prior use, but the article disappeared from the market in a few years, just why does not appear. Davis also swore that he mixed phenolphthalein with gum, but the proof of this scarcely rises to what is required on such an issue, and the experiment was unsuccessful anyway.

Cascara, at least in the form of bark, is bitter and of much greater volume than phenolphthalein in medicinal doses; so that the necessary amount is very much larger in proportion to the whole gum tablet. The plaintiff's evidence was that, if used in large enough doses, it would make the gum friable; but this defect could apparently be reduced, if not eliminated, by the substitution of cascara extracts.

The defendant proved by several witnesses that, if one mixed phenolphthalein into gum during the process of manufacture, it was possible to chew out of it only a very little, not enough for laxative purposes. The plaintiff proved quite the opposite; i. e.,

that half the phenolphthalein could be chewed out, when the gum was properly prepared. The difference in these results depended apparently upon the character of the gum used and the temperature of the mix; but in any event it appeared that, when the drug is directly mixed with the gum, the bond between them varies with the process used.

Pennie, Davis, Marvin & Edmonds, of New York City (Charles Neave, Dean S. Edmonds, and Frank E. Barrows, all of New York City, of counsel), for appellant.

Kirsh, Edelman & Brandeis, of New York City (Edwin L. Garvin, Wallace T. Stock, and Irvin A. Edelman, all of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] We do not find it necessary to say whether the substitution of phenolphthalein for cascara in a laxative chewing gum would be an invention. Perhaps not, however great the success when it appeared. Again, we do not find it necessary to say whether, if that substitution be an invention, the claim in suit will cover a gum in which the laxative is not mixed in during manufacture, but is dusted upon the outside and held in place by an outer layer of sugar. Given an adequate disclosure of one way to practice the invention, perhaps the underlying notion might be generalized so far. Granting to the appellant favorable answers to both questions, we think, not that the invention is inoperative in the sense that it cannot be practiced at all, for the plaintiff has proved that it can, but that the specifications do not disclose how the drug can be mixed so as to insure its release. It is scarcely necessary to labor the principle that specifications must be more than a suggestion for promising experiment, hit or miss. They must contain complete directions, leading with certainty to the result. Matheson v. Campbell, 78 F. 910, 916 (C. C. A. 2); Hemming Mfg. Co. v. Cutler-Hammer Mfg. Co., 243 F. 595 (C. C. A. 7); Leonard v. Maxwell, 252 F. 584, 590 (C. C. A. 2); Electro-Dynamic Co. v. United States L. & H. Corp., 278 F. 80, 84 (C. C. A. 2).

[2] The plaintiff attempts to discredit the defendant's proof that obedience to the disclosure will not produce a laxative gum, by appealing to the well-known reluctance of courts to place much weight upon ex parte experiments. Kuehmsted v. Farbenfabriken, 179 F. 701, 709 (C. C. A. 7); Ryncar v. Evans (C. C.) 83 F. 696. The reasons which justify that reluctance do not extend to what is done ante litem motam, when there is no motive to fabricate. Gordon made two efforts to make a phenolphthalein chewing gum in 1917, long before the Sulzberger patent was being exploited, and when, so far as appears, he had no reason to fear it. He failed in each case, and succeeded only when he adopted the present commercial practice of both the parties here. He had no common interest with the defendant, and was a qualified chemist in the employ of the American Chicle Company. We see no ground to discredit his testimony, or his efforts, except that he would not tell upon the stand all the gums which he used in his base, that being a trade secret. It would, however, be extravagant to seize upon that as a reason for doubting that the base was a genuine chewing gum, as it certainly was. If it contained gums which combined with the drug, but which gum makers might add, not gratuitously or disingenuously, Sulzberger gave no intimation of them, as he should have. Else how was a maker to know what to omit from his formula? As it read, the disclosure was general; if it was applicable only to some species of gums, no one could tell which.

Davis, also a gum maker, made a similar trial long before he could have had any motive to prove it unsuccessful, and this also was a failure. So far as appears, there was nothing peculiar in his gum, and perhaps the trouble was in the temperature of the mix. Surely we ought not to discredit his testimony on any score, and it shows that there is more in the art than what Sulzberger ever knew.

The trials of Kiss are indeed subject prima facie to the suspicion generally felt in such cases, but they are not for that reason to be wholly ignored. Putt, the plaintiff's expert, gives the probable explanation of Kiss's failure, without assuming that he wanted to fail. Chewing gum is a complex organic solvent for other organic compounds, such as phenolphthalein. Care must be taken lest the two combine chemically, after which the saliva will not extract the drug, however gallantly one may chew. Perhaps the result depends upon the temperature of the mix; perhaps on other factors. It is enough to break the force of the objection that the plaintiff has itself given an explanation consistent with good faith in the experiment. Moreover, even if we attribute bad faith to Kiss, because of knowledge acquired outside the patent, at least it is apparent that, unless we should impute that knowledge to gum makers as such, the disclosure was not adequate.

[3] Putt, it is true, says that any one could have corrected all difficulties by two days of experiment, if he had had adequate facilities, and upon this we are urged to apply what we said in Dick v. Barnett, 288 F. 799. We agree that a patentee is entitled to expect those who follow his teaching honestly to try to reach his result. Certainly they may not blind their eyes to his obvious omissions or errors. Nevertheless the law demands of them little imagination, and a patentee may not ground his monopoly upon mere cues for promising experiment. This consideration is especially important in the case at bar. These specifications are not addressed to pharmacists, but to gum makers, men charged with knowledge of that art, but not with the chemical affinities of phenolphthalein. In the laboratories of great manufacturers, indeed, there may be men versed in both arts; but the specifications must be enough for lesser folk as well. It appears to us quite unwarranted to assume that every one, though a competent gum maker, would by simple trials learn the cause of his failure and the means of its correction. Rather, it is extremely probable that Sulzberger himself had no notion that there were any difficulties at all. His grouping of all laxatives generally in one class, and his addition of any other drugs one chose, strongly suggest that he ignored the chance of chemical affinities which would tie up the active agents. It seems to us incredible, if he had, that he should have given no clue to so essential a part of his practice. We agree with Judge Moscowitz that the disclosure of a gum and drug mix was insufficient.

If so, plainly there was no disclosure of the actual commercial practice. Even if the claim covers the practice, the practice will not support the claim. Indeed, the disclosure not only fails to give even an inkling of the practice, but so far directs attention to the mix as to make it doubtful how far the claim will stretch.

Decree affirmed.