## NOVADEL PROCESS CORPORATION v. J. P. MEYER & CO., Inc., et al.

Circuit Court of Appeals, Second Circuit. November 4, 1929.

No. 21.

Joffe & Joffe, of New York City (Louis Joffe, Joseph Joffe, and Benedict Joffe, all of New York City, of counsel), for appellant.

Livingston Gifford, of New York City, for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. This suit is for infringement of patent No. 1,539,701, dated May 26, 1925, granted on an application filed November 24, 1920. Claims 2, 5, 9, 11, 12, 17, and 24 are in suit. The patent is for a process for bleaching, preserving, and increasing the baking qualities of flour and of other milling products, and its object is to improve the color as well as the baking qualities and durability of these. The inventor says he means by improvement of baking qualities that the dough prepared from meal treated in this way swells stronger than dough from untreated meal, and produces loaves which are proportionately larger from the same amount of flour or meal. But its most important properties are for the coloring and yet keeping the quality of the flour. The patent states that it is "in part a continuation of my co-pending United States patent application filed December 19, 1916, serial No. 136,551," which was granted May 31, 1921, and is known as No. 1,380,334.

The present application is complete, with petition and oath. The oath recites 15 foreign applications for the same invention, the earliest in the Netherlands, December 22, 1915. The present application is filed within the time prescribed by the Revised Statutes, § 4887, as amended (35 USCA § 32), as extended by chapter 126, 41 Stat. 1313, Act March 3, 1921 (35 USCA §§ 80–87). The date of the invention must be carried back of November 24, 1920, which is the date of application of the patent in suit.

The plaintiff sells its product under the trade-name "Novadelox." It is a compound of benzoyl peroxide and calcium diphosphate, in proportions of one to five, and is used by millers for bleaching flour. Originally, in its manufacture and use in the Netherlands, the material consisted entirely of benzoyl peroxide; but in 1921 calcium diphosphate was added, and found to better distribute or carry the benzoyl peroxide throughout the flour. The appellant's infringing article is sold under the trade-name of "Purifyne," and has the same constituents as "Novadelox," in proportion of one part benzoyl peroxide to three parts calcium diphosphate, and in selling its products the appellant, in its circular letter, gave directions for its use in bleaching flour. The chemical compound thus made under the appellee's patent has achieved very considerable success, growing from 150 customers in 1922 to 1,508 customers in 1927, with an estimated treatment in 1927 of 50,000,000 barrels bleached with "Novadelox."

The problem of obtaining a satisfactory bleaching compound had interested this art for many years. The pioneer invention of Andrews (United States patent No. 693,207, dated February 11, 1902) came in what is referred to as the gaseous or inorganic period. This patent was considered and held valid and infringed in Naylor v. Alsop Co., 168 F. 911 (C. C. A. 8). Next came the period of the acyl peroxide group, chemically related to hydrogen peroxide, which is represented by a process made under the patent in suit. The prior art was recognized by the patent in suit. This inventor refers to the Andrews invention for the use of peroxide of nitrogen; the "ozone" process, invented by Frichot, which was to bleach flour with the aid of ozone, or by means of molecular oxygen obtained by the decomposition of water or other liquids of electrolysis. These in practice, failed to find a sufficient bleaching action upon flour. The use of hydrogen peroxide, or rather inorganic peroxide, used in quantities without injury to the physical properties of flour, it was found, made no change in the color and an insufficient bleach-

700

ing was obtained. This was due to the action of the enzymes in flour upon the peroxide.

■ In the patent in suit, a clear distinction is made between inorganic flour bleaches of the prior art and organic peroxidation products. It points out that organic peroxidation products, which give excellent results, are of organic peroxides of the type of benzoyl peroxide, or of acety-benzoyl peroxide; organic peracids, such as peracetic acid or perbenzoic acid, and the salts of the peracids mentioned. These materials are solids, except peracetic acid. They may be grouped as acyl compounds, and comprise the substitution of acyl radical for one or both hydrogens in hydrogen peroxide. The patent recognizes this, and the claims should be limited to acyl compound. Smokador v. Tubular Products Co., 31 F.(2d) 255 (C. C. A. 2d). Claims 5 and 11 are limited to a benzoyl peroxide compound, claims 3, 12, and 24 to benzoyl peroxide, and claims 2 and 9 are more generic, for an "organic peroxide" or an organic peroxide compound. An organic peroxide may be applied in flour either as a solid or a liquid. The amount required may be altered in accordance with the condition and the quality of the flour to be treated, but the patent says: "As a general rule, a small amount, such as a few hundredths of 1 per cent., is quite sufficient."

Claim 24 is limited to a mixture of "not substantially greater than 0.02 per cent." The patent says that it should be "an intimate mixture," which implies that the benzoyl peroxide shall be in a fine state of division, like the flour. After the mixing has taken place, it is the intent of the patent that the bleaching may take place either (a) when the mixture is simply allowed to stand, as in storage; (b) by the action of light rich in chemically actinic rays; and (c) by the action of heat, as 65° C. In practice, both the appellant and appellee rely upon time, without light or heat, as the stipulation of the parties indicates. The organic peroxidation products referred to all belong to the class of the acyl peroxides, and have common characteristics, which make them useful for bleaching flour and, when mixed with flour, they give off their own vapor, which penetrates broadcast throughout the flour. There is expert testimony showing that hydrogen peroxide, being the elementary peroxide grouped together, as the patent does, specifies organic peroxide compounds or organic peroxidation products, being compounds containing one or two acyl radicals and chemically related to hydrogen peroxide. This testimony we will accept as our guide, and we will limit the claims to the acyl group of compounds, in view of this testimony and phrase of the specifications.

■ The appellee, since 1920, has used calcium diphosphate with benzoyl peroxide in its "Novadelox," and appellant has also used it in its "Purifyne" since 1926. Calcium diphosphate does not enter the reaction, for it is chemically inert and negative. It is a distributor of the benzoyl peroxide throughout the flour, and therefore its function is solely physical. Because so small a quantity of benzoyl peroxide is used in proportion to the flour, a filler was found desirable to separate the particles and broadcast them through the flour. Since calcium diphosphate has no influence upon the bleaching action, as it is chemically inert, its use does not avoid infringement. Walker on Patents (5th Ed.) § 347, p. 431; section 376, p. 463. It performs the same function as the diluted lactic acid referred to in the patent. The diluted lactic acid is a liquid, while the calcium diphosphate is a solid; but both are without action on the peroxides when cold, and are readily absorbed by the flour and without injury to it. They serve the same purpose in the mixture. The appellant, in copying and using the calcium diphosphate, accepts the equivalent solid of the liquid diluted acid to which the patent refers, and accordingly infringes.

In defense, the appellant argues that the original application of 1916 petitioned for a patent for bleaching every kind of flour by hydrogen peroxide and all other "true peroxides," inorganic and organic, by a two-step method; that it now omits the second step; that hydrogen peroxide will not bleach flour, but, if it does, it is anticipated by the prior art. The argument proceeds that the application for the patent in suit is a divisional application of that of 1916. But the patent in suit specifies that the "present application is in part a continuation of my co-pending United States patent application filed December 19, 1916." The 1916 specification described the use of hydrogen peroxide, but it also said: "The expression 'true peroxides' stand for those inorganic peroxides which may be considered to be salts of hydrogen peroxide, and for this compound itself, as well as for organic peroxides."

■■ An amendment was filed before the patent on the 1916 application issued, so as to have generic claims to the use of the peroxide compound and specific claims to the use of an inorganic peroxide. This is said to be fatal. The Patent Office rules permit a patent to have a generic claim, together with a

claim for one species, but do not permit claims for two species in the same patent, even though described in the specification. This prohibited the patentee from claiming the use of organic peroxide specifically in the patent on the 1916 application, in view of the fact that it claims specifically the use of inorganic peroxides. He therefore claimed the second species in a second application, which is what he did in November, 1920, in his application for the patent in suit. He refers to the latter as in part a continuation of the former, because the former had mentioned the use of organic peroxides in the specification, without specifically claiming organic in the patent then to issue. In his letter of December 23, 1920, a part of the file contents, he explains the relationship of the patent issued in 1916 in saying that the use of the organic peroxides is "referred to in the present case, but not specifically claimed therein." The charge of, anticipation by the 1916 application is based upon the prior art mentioned in the patentee's patent of 1916, comparing the prior art with the claims issued on the 1916 application. It is clear that none anticipated, and the patentee in the Dutch patent did not state they did.

But it is said that the November, 1920, application was barred, because it was too long after the British patent of 1917, and the Dutch patent filed December 22, 1915, and the argument proceeds that the application of 1920 is really an amendment to the "parent application" of 1916. It was so stated by the patentee under oath to the Patent Office, when he claimed the original date of 1916. The record does not bear out these contentions. The oath of 1920 made no mention of the 1916 application, and the statement found in the file contents refers to the present application as in part a continuance of the applicant's co-pending application filed December 12, 1916, and, so far as all common subject-matter is concerned, the present application is entitled to the date of the parent case. The inventor's two patents are for distinct subject-matters. The patent in suit resulted from a separate application filed November 24, 1920, on an application complete in all its statutory requirements. All the claims in the patent in suit are limited to organic peroxide compound, and all the bleaches set forth in the specifications which are in the acyl group of hydrogen peroxide in counter distinction to hydrogen peroxide itself. It was a continuing application, and, in so far as the subject-matter is common to both, it is entitled to priority if the plaintiff desires to assert it as of the filing date of 1916. Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491; General Electric Co. v. Independent Lamp & Wire Co., Inc. (D. C.) 267 F. 824.

The 1920 application was filed within the time required by the Nolan Act (Act March 3, 1921, c. 126, 41 Stat. 1313), and the foreign patents may not be pleaded as in anticipation. By section 4887 of the United States Revised Statutes, as amended, 12 months was allowed this patentee, a subject of the Netherlands, after his foreign application, for filing an application in the United States for a patent for the same invention; but this was extended, by the Nolan Act of March 3, 1921, because of war conditions, and his time did not expire until after the date of the application for this patent, November 24, 1920. It provided that such application could be made until the expiration of six months from the passage of the act, by citizens of the United States or citizens or subjects of all countries which have extended, or which extended within said period of six months, substantial reciprocal privileges to the citizens of the United States, and such extension applied to applications where patents were granted, as well as applications pending and filed within the period mentioned. The Netherlands gave such reciprocal privileges to citizens of the United States.

On January 15, 1921, an amendment was made to the application by inserting: "Even without heating, and without subjecting to actinic light, the bleaching is effected to some extent, when the mixture is simply allowed to stand, as for instance in storage." And it is argued, by the appellant, that this statement was converting the application from a two-step into a one-step process. Claim 5, which had been in the application prior thereto and continued until the allowance of the patent, provided for a process "in the treatment of flour and milling products the step of intimately incorporating such material with an organic peroxide compound." No reference is made in that claim to a second step, and it covered what the appellant now calls a one-step process. If the mixing be counted as one step, the amendment merely means that the second step may be done in any of three ways, either by standing, by heat, or by actinic light. In either case it may be argued that there are two steps; the decomposition takes place then in the second step, if the second step be storage, or if the second step be heat or actinic light.

Nor was this new matter, as is referred to

702

in Chicago & N. W. Ry. Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053, Russell v. Dodge, 93 U. S. 460, 23 L. Ed. 973, Dwight & Lloyd Sintering Co. v. Greenawalt (C. C. A.) 27 F.(2d) 823, and Stumpf v. A. Schreiber Brewing Co. (C. C. A.) 252 F. 142. These cases considered patents which contain drawings as well as specifications, and the reissue statute, Rev. St. § 4916 (35 USCA § 64), provides: "Nor in the case of a machine-patent shall the model or drawings be amended, except each by the other." At bar there were no drawings in the patent, and the above provision of the statute does not apply. Nor in the authorities referred to were the amendments merely a statement of a characteristic or property of the thing already described. Here the amendment describes merely a characteristic or property of the mixture; that is, that it reacts by standing as well as in the presence of heat or actinic light. Moreover, at bar there are no vested rights involved with which the amendment interfered. No new matter was introduced in the claim, as well as the specification.

In Hobbs v. Beach, 180 U. S. 395, 21 S. Ct. 409, 414, 45 L. Ed. 586, the Supreme Court approved the practice of permitting amendments where there had been no intervening rights. The court said: "The patent had been the subject of an earnest contest in the Patent Office for four years; had been put in interference with five other devices, and it was scarcely possible that, after this long litigation, the patentee should not have detected defects in his original application, and have taken this opportunity of correcting them. His experience in this litigation had doubtless apprised him of the weak points in his prior specification and claims, and it was perfectly competent for him to restate them, provided his patent was not essentially broadened to cover intervening devices."

■■ An applicant cannot amend for the purpose of including the device or processes of third parties, who may be using the invention during the prosecution of the application, without the nonessential elements or the step in question. But he may more clearly point out what he regards as essential and what he regards as nonessential in the process originally disclosed by him in the papers which he filed in the Patent Office. This is not adding to the patent application. There can be no valid objection to pointing out matters with reference to that which is already in the application as filed, particularly that some parts are essential and some nones-

sential. This patentee concluded, during the prosecution of his application, that mixing the peroxide with flour and storage were the only things required, and that it was unnecessary to use heat, or actinic rays, or any other physical or chemical interference, to produce reaction between the peroxide and the flour, and it was lawful for him to amend his specifications in announcing that fact. It is of no importance now that he knew that the heat or actinic rays were essential or nonessential at the time he filed his application. There were no intervening rights as far as this appellant is concerned, nor does it show any intervening rights of others.

■ The claims as written, 9, 11, and 12, show the broad mixture, and claims 7 and 24 the broad mixing step claims, as well as the completed process illustrated by claims 2 and 5. The appellant claims that no mixture claims were included in the application when it was sent to the Patent Office, but were added later during the prosecution of the case. The step which produced the mixture was claimed in original claim 5, and, moreover, there is no distinction between claiming the step of mixing and the mixture produced; this, for the reason, that the supplemental oath supporting the mixture claims was added, as it appears from the file wrapper, and is in accordance with the practice in such matters. Amer. Cone & Wafer Co. v. Denaro (C. C. A.) 297 F. 913. A mixture claim, or a process and mixing claim, may be based upon the same inventive act. Rubber Co. v. Goodyear, 9 Wall. (76 U. S.) 788, 19 L. Ed. 566. It is not necessary for the applicant to state the theory or principle upon which the advantageous result is based. Ward Baking Co. v. Hazleton Baking Co. (D. C.) 292 F. 202; Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Eames v. Andrews, 122 U. S. 40, 7 S. Ct. 1073, 30 L. Ed. 1064.

■ Nor was there a violation of rule 70 of the Patent Office to which the appellant refers. That rule provides that "in original applications all amendments of the drawings or specifications, and all additions thereto, must conform to at least one of them as it was at the time of the filing of the application. Matter not found in either, involving a departure from the original invention, cannot be added to the application even though supported by a supplemental oath, and can be shown or claimed only in a separate application." The amendments not allowed by this rule are those involving a departure from the original invention which was not the fact here. Moreover, the Patent Office allowed the amendment.

The cases to which the appellant refers are distinguishable. In Motion Picture Patents Co. v. Independent Moving Pictures Co. (C. C. A.) 200 F. 415, there was a delay of six years in filing the amendment and intervening rights of over two years. The amendment was not sworn to. There were drawings in the application, and the amendment was disallowed. In Railway v. Sayles, 97 U. S. 554, 24 L. Ed. 1053, there was a delay of over five years with intervening rights and drawings in the application; the amendment was disallowed. In Stewart v. Lava Co., 215 U. S. 168, 30 S. Ct. 46, 54 L. Ed. 139, the amendment was not sworn to, and the inventor testified that he never invented the subject of the amendment. The amendment was disallowed. Morse Co. v. Link Co. (C. C. A.) 189 F. 584, was a reissue case; there was a delay of four years with intervening rights of the same length of time, and drawings in the patent. United Wireless Co. v. National Co. (C. C. A.) 198 F. 395, was delayed for over two years. The amendment was not sworn to and there were drawings in the application. It does not appear whether there were intervening rights; the amendment was disallowed. In Dwight Co. v. Greenawalt (C. C. A.) 27 F.(2d) 828, there was a delay of four years with intervening rights of over two years. The amendment was disallowed. Russell v. Dodge, 93 U. S. 460, 23 L. Ed. 973, involved a reissue patent; the amendment was disallowed, but the controlling facts are not clear in the opinion. These cases are distinguishable from the one at bar because of the delay, the presence of intervening rights, and the necessary drawings in the original application. A distinction is made in the reissue section of the patent statute between the presence and absence of drawings.

It is further argued that the patent is invalid because it does not adequately disclose how to practice the invention. The cases of Health Products Corp. v. Ex-Lax Mfg. Co. (C. C. A.) 22 F.(2d) 286, Rohm v. Martin Dennis Co. (C. C. A.) 263 F. 389, and Tannage Patent Co. v. Zahn (C. C.) 66 F. 986, are referred to in support of the doctrine that there must be a disclosure of the patentee's actual commercial practice. The invention is a process, which makes known the discovery that benzoyl peroxide or other acyl hydrogen peroxide derivative will bleach flour. The 1920 application for the patent gave various ways of practicing this discovery inclusive of the use of heat or actinic light or liquid solution or suspension. The appellant substantially admits that the invention will work, if any one of these ways is practiced. Indeed, they admit that coarse granules will work with heat or actinic light. There is a sufficient disclosure for practicing the invention. The treatment by storage is sufficiently set forth. The record discloses storage was not practiced in Holland, because of the custom there of delivering flour the same day it is milled, and therefore there was need for an accelerator for the bleaching, such as heat or actinic light affords. The custom in this country permitted storage before delivery, and, when this was ascertained it became the subject of the amendment to the application.

Appellant further argues that the patent is invalid because of the failure to disclose the use of calcium diphosphate for four years while the patent was pending and before it was issued. But section 4920, Rev. Stat. (35 USCA § 69), requires that a failure to disclose, to be effectual in prohibiting the grant of the patent, must have been for the purpose of deceiving the public. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177. No such claim is made here.

Under the patent statute, a new and useful composition of matter, such as mixture claims 9, 11, and 12, is patentable. The complaint that the mixture claims give no information by which the mixture could be identified does not invalidate them. None was necessary, because both ingredients of the mixture were known and the means of identifying them were known. This was sufficient identification. The authorities to which we are referred (Cochrane v. Badische Anilin & Soda Fabrik, 111 U. S. 293, 4 S. Ct. 455, 28 L. Ed. 433, and The Wood Paper Patent, 23 Wall. (90 U. S.) 566, 23 L. Ed. 31) are not in point, because there the claims purport to be for new individual products theretofore unknown and of which there was no means of identification. The mixture claims here are not for the bleached flour, but for the mixture which reacts to produce bleached flour.

Further reference to the prior art is unnecessary, for it fails to disclose an anticipation of appellee's patent.

Appellant has stipulated that it manufactures and sells a mixture containing benzoyl peroxide, known as "Purifyne," which consists of approximately one part by weight of benzoyl peroxide and three parts of calcium diphosphate, and its "Purifyne" is sold to millers of wheat flour for bleaching the flour. It is used by millers, mixing it dry with the flour in proportions of approximately 1 part of "Purifyne" by weight to 8,000

parts of flour, after which the flour is stored or packaged, and remains for a period of at least three days before being used, during which time the flour is bleached by "Purifyne". This is a sufficient admission of infringement. All the claims are infringed.

Decree affirmed, with costs.